# IN THE UNITED DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE

**JOHN WHITE,**

        Plaintiff,

vs.

                                                        No: 3:24-cv-00384-JEM

**AUTO-OWNERS INSURANCE COMPANY,**

        Defendant.

## AMENDED COMPLAINT

Comes the Plaintiff, John White, and for his cause of action against the defendant, Auto-Owners Insurance Company (hereinafter referred to as "Auto-Owners"), states the following:

1. John White is a citizen and resident of Knox County, Tennessee and resides at 7913 Ashley Road, Powell, TN 37849

2. Auto-Owners is an insurance company that has its principal place of business in the state of Michigan and that does business in the state of Tennessee, including issuing homeowners insurance policies that insures homes of residents in the state of Tennessee. Auto-Owners may be served with process by serving its agent for service, Tennessee Commissioner of Commerce and Insurance.

3. Auto-Owners issued a homeowners policy number 41-165-427-01 to insure the plaintiff's residence located at 7913 Ashley Road, Powell, TN 37849.

4. The plaintiff's home sustained damage that constitutes a loss under the homeowners policy, and notice of the loss was given to Auto-Owners' agency in early October 2022.

5. After notice was given, Auto-Owners sent an adjuster to the plaintiff's home to investigate the loss. It was determined by Auto-Owners that the plaintiff had sustained losses resulting from roof water leaks in addition to the mold damage loss.

1

6. Auto-Owners concluded that the losses were covered by the homeowners policy and began the process of remediating the losses sustained by the plaintiff.

7. As part of the remediation process, a contractor, SERVPRO, was engaged to do mold remediation work. This work was overseen by Auto-Owners' representative, John Pemberton. During the mold remediation work, John Pemberton gave instructions to SERVPRO regarding how the work was to be performed. The plaintiff made repeated requests for a written scope of work or work plan, and these were not provided.

8. John Pemberton represented to the plaintiff at the plaintiff's home in the presence of a representative from ServePro that the mold remediation work would be covered under the policy coverage for fungi, wet rot, dry rot and bacteria in the sum of $49,950.00 X 2 since there were two separate claims set up by Auto-Owners for the losses. John Pemberton further represented to the plaintiff that the restoration of the plaintiff's home would be covered under the policy coverage for dwelling in the sum of $499,500.00. The plaintiff relied upon these representations as the mold remediation work continued at the plaintiff's home. This work included basically gutting the house including removal of sheetrock, ceiling tiles, carpet, wood paneling, draperies, vertical blinds, and other items of the structure of the plaintiff's home.

9. As part of the process for work to commence for the restoration of the plaintiff's home, plaintiff obtained estimates for the various items needed for restoration. These estimates revealed that the total cost for restoration was at least $258,861.94. These estimates were submitted to Auto-Owners on March 11, 2024.

10. On April 11, 2024, a representative of Auto-Owners, Shawn Alexander, forwarded an email to the plaintiff with an estimate for repairs prepared by an independent adjuster, George Beeler. The estimate and accompanying remarks by George Beeler contained mistakes and were

2

Case 3:24-cv-00384-JEM  Document 22  Filed 12/06/24  Page 2 of 12  PageID #: 79

inconsistent with the coverage to which the plaintiff was entitled under his homeowners policy. Also, the estimate and remarks improperly placed limits on the benefits available to the plaintiff under the policy, and these limits were contrary to the language and coverage of the policy. Furthermore, the estimate and remarks reflected that Auto-Owners had ignored information provided by plaintiff to Auto-Owners regarding errors in charges for work performed during the mold remediation process, which resulted in payments made by Auto-Owners to contractor that should not have been applied against any purported limits on benefits available to the plaintiff. This also revealed poor management oversight and absence of good faith on the part of Auto-Owners in processing the plaintiff's claim.

11. In the email, Shawn Alexander said that he would be forwarding payment. Shawn Alexander subsequently sent the plaintiff two checks, one in the sum of $9,456.84 and the other in the sum of $18,246.24.

12. In an effort to get an explanation as to why Auto-Owners was not paying his claim, the plaintiff sent an email dated April 17, 2024 to Auto-Owners' agent, Michelle Fraser. In a reply email on the same day, Michelle Fraser indicated that she would reach out to Shawn Alexander to get some clarification. However, Michelle Fraser never provided any clarification and never communicated further with the plaintiff on mold and roof leak damages since this email.

13. On June 6, 2024, the plaintiff sent an email to Jack Brunner, a supervisor for Auto-Owners, who upon information and belief is the supervisor of Shawn Alexander. This email provided information regarding why plaintiff's claim should be paid. Jack Brunner never responded to the email.

14. Auto-Owners refusal to respond to the plaintiff's communications revealed poor

managerial oversight and an absence of good faith on the part of Auto-Owners in processing the plaintiff's claim.

15. Legal counsel for the plaintiff sent a letter dated June 17, 2024 to Shawn Alexander, Jack Brunner and Michelle Fraser explaining that Auto-Owners had failed to respond to the plaintiff's communications and making demand for payment of the claim. The letter also gave notice that the failure to pay would constitute bad faith and would subject Auto-Owners to additional liability under Tenn. Code Ann. §56-7-105. The letter further advised that it is imperative that Auto-Owners provide funds as soon as possible for the restoration of the plaintiff's home since the plaintiff is facing serious health issues and is presently required to live in his home that has been basically gutted and that is in need of being restored. A copy of this letter is attached as **Exhibit 1** to this Complaint.

16. Shawn Alexander sent a letter dated June 18, 2024 to the plaintiff's legal counsel. The letter revealed that Auto-Owners would not pay anything more on the claim other than the two checks previously issued by Auto-Owners. A copy of the letter is attached as **Exhibit 2** to the Complaint.

17. The provisions and endorsements of the homeowners policy issued to the plaintiff provide coverage for the plaintiff's claim. Under the policy the plaintiff is entitled to recover the full amount required to restore the plaintiff's home. There is no language within the policy to limit the plaintiff's recovery.

18. All conditions precedent have been met for the plaintiff to have full recovery under the homeowners policy.

19. The failure of Auto-Owners to pay all sums to which the plaintiff is

4

entitled to recover under the homeowners policy constitutes a material breach of contract that has caused damages to the plaintiff. The plaintiff is entitled to recover all damages sustained including, but not limited to, all costs necessary to restore the plaintiff's home.

20. Auto-Owners represented to the plaintiff that the plaintiff's claim would be fully covered under the policy including the restoration of the home, and the plaintiff relied upon the representations. Furthermore, if Auto-Owners' representations were not true, Auto-Owners would be in violation of Tenn. Code Ann. §56-8-105(1) and also in violation of Rule 0780-01-05-.06(2) of the Rules of Tennessee Department of Commerce and Insurance, Division of Insurance, which provides that "[n]o producer shall misrepresent to named insureds benefits, coverages or other provisions of any insurance policy or insurance contract when such benefits, coverages or other provisions are pertinent to a claim." Under the doctrines of waiver, unclean hands, estoppel, equitable estoppel, promissory estoppel, and promissory fraud, the plaintiff is entitled to recover his damages from Auto-Owners, and Auto-Owners is barred from any defenses to the plaintiff's claim.

21. Auto-Owners violated Tenn. Code Ann. §56-7-125, including violating the plaintiff's right to receive quality work to restore the damages to his home, by giving directions to the contractor as to how to perform the work at the plaintiff's home, and by refusing the plaintiff's requests for a detailed estimate of the scope of damages and cost of repairs. Furthermore, Auto-Owners failed to provide the plaintiff with a written statement of his basic rights to which he was entitled under the policy. Auto-Owners' violations would entitle the plaintiff to recover his damages from Auto-Owners and would bar Auto-Owners from asserting defenses to the plaintiff's claim.

5
Case 3:24-cv-00384-JEM   Document 22   Filed 12/06/24   Page 5 of 12   PageID #: 82

22. Auto-Owners violated Rule 0780-01-05-.07(3) of the Rules of Tennessee Department of Commerce and Insurance, Division of Insurance, which provides that an insurance company is required to make an appropriate reply within 30 days of all pertinent communications from a claimant which reasonably suggest that a response is expected. The plaintiff is entitled to recover his damages from Auto-Owners, and Auto-Owners is barred from asserting defenses against the plaintiff.

23. Under Rule 0780-01-05-.10(1)(a) of the Rules of Tennessee Department of Commerce and Insurance, Division of Insurance, Auto-Owners is barred from refusing to pay the plaintiff for all consequential physical damage incurred in making repairs or replacement at his home. This rule entitles the plaintiff to recover all consequential damages and bars any defenses that Auto-Owners may attempt to assert that any such damages are not recoverable.

24. Auto-Owners refusal to pay the plaintiff's loss was not in good faith and has inflicted additional expenses, loss, and injury including attorney fees and expenses of litigation upon the plaintiff. Under Tenn. Code Ann. §56-7-105, the plaintiff is entitled to recover, in addition to the loss and the interest thereon, the additional expenses, loss, and injury, including attorney's fees and expenses of litigation. All conditions precedent have been met for the plaintiff to recover under this statute.

25. Auto-Owners' acts, omissions, violations and failures set forth in this Complaint constitute a material breach of Auto-Owners implied duty of good faith and fair dealing and has caused damages to the plaintiff. Auto-Owners is barred from asserting defenses to the plaintiff's claim.

26. Auto-Owners' acts, omissions, violations and failures set forth in this Complaint constitute unfair claims practices and violations of Tenn. Code Ann. §56-8-105 including

6

knowingly misrepresenting relevant facts or policy provisions relating to coverages, failing to acknowledge with reasonable promptness pertinent communications with respect to claims, failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims, failing to attempt in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear, and failing in the case of claims denial or offers of compromise settlement to promptly provide a reasonable and accurate explanation of the basis of such actions. Auto-Owners' violations would bar Auto-Owners from asserting defenses to the plaintiff's claim.

27. Under the doctrines of waiver, unclean hands, estoppel, equitable estoppel, promissory estoppel, and promissory fraud, Auto-Owners' acts, omissions, violations, and failures set forth in this Complaint entitles the plaintiff to recover his damages from Auto-Owners and precludes any defenses that may be asserted by Auto-Owners to the plaintiff's claims.

28. Under Tenn. Code Ann. § 56-8-113, the plaintiff is entitled to pursue all available remedies, causes of action, rights to relief, and sanctions under common law and all available declaratory, injunctive, and equitable relief. The plaintiff seeks all recovery and relief against the defendant that is available to the plaintiff. Furthermore, in accordance with Tenn. Code Ann. § 26-8-101(c), no allegations contained within this Complaint are intended to assert a private cause of action for violations of the part referenced in Tenn Code Ann. § 56-8-101(c).

**Wherefore**, the plaintiff, John White, prays for the following:

1) Judgment in favor of the plaintiff and against Auto-Owners for a sum of at least $258,861.94 plus, all additional sums that are necessary to restore the plaintiff's home and to fully compensate the plaintiff for all losses for which the plaintiff is entitled to recover under the policy;

2) Judgment in favor of the plaintiff and against Auto-Owners for a sum to fully compensate the plaintiff for all additional expenses, loss, and injury including attorney fees and expenses of litigation;

3) Judgment in favor of the plaintiff and against Auto-Owners for prejudgment interest;

4) Judgment in favor of the plaintiff declaring and ordering that Auto-Owners is barred and precluded from asserting any defenses to plaintiff's claim;

5) Judgment in favor of the plaintiff and against Auto-Owners for discretionary costs;

6) Judgment that all court costs be taxed to Auto-Owners; and

7) All additional relief in favor of the plaintiff that the court deems appropriate.

Respectfully submitted this the 6th day of December, 2024.

/s/ Reggie E. Keaton
Reggie E. Keaton (BPR No. 11021)
**FRANTZ, MCCONNELL & SEYMOUR, LLP**
550 W. Main Street, Suite 500
Knoxville, TN 37902
Email: rkeaton@fmsllp.com
(865) 546-9321
*Attorney for Plaintiff*

S:\WDOX\CLIENTS\7804\000036\COMPLAIN\02836312.DOCX

ROBERT L. KAHN
REGGIE E. KEATON
MICHAEL W. EWELL
JOHN M. LAWHORN
JAMES E. WAGNER
BEVERLY D. NELMS
MARY ELIZABETH MADDOX
BENJAMIN C. MULLINS
RICHARD T. SCRUGHAM, JR.
MATTHEW A. GROSSMAN
KEVIN A. DEAN
SHARON H. KIM
RICHARD E. GRAVES
REBEKAH P. HARBIN
MICHAEL A. C. LEE
NIKOL D. PLUESS



*client-centric & committed to success*

Email: rkeaton@fmsllp.com
Direct Fax: 865-541-4610

550 W. Main Street
Suite 500
Knoxville, Tennessee
37902

phone 865.546.9321
fax 865.637.5249
web fmsllp.com

June 17, 2024

Shawn Alexander
Auto-Owners Insurance
P.O Box 32609
Knoxville, TN 37930
alexander.shawn@aoins.com

via Email & U.S. Mail

Jack Brunner
Auto-Owners Insurance
P.O. Box 32609
Knoxville, TN 37930
brunner.jack@aoins.com

via Email & U.S. Mail

Michelle Fraser
Oakbridge Insurance
10325 Technology Drive
Knoxville, TN 37932
mfraser@oakbridgeinsurance.com

via Email & U.S. Mail

Re: Claimant: John White, 7913 Ashley Drive, Powell, TN 37849
Policy No.: 41-165-427-01
Claim Nos.: 300-0614356-2022
300-0672038-2022

All:

Please be advised that I am legal counsel for John White with regard to his claims under the above-referenced homeowners policy issued by Auto-Owners. Early in the claims process, Auto-Owners represented to my client that the mold mitigation would be covered by the sum of $49,950.00 for fungi property coverage and that this coverage sum would be doubled since there are two claims being made. Auto-Owners also represented to my client that the restoration phase would be covered by the sum of $499,500.00 for dwelling coverage as set forth in the policy declaration. My client relied upon these representations, and the work proceeded to address the problems with his home. The work has proceeded to the point that my client's home was basically gutted, after which point it was time for the restoration phase to begin. To help

EXHIBIT 1

facilitate the restoration phase, my client obtained estimates for the materials and work required for the restoration, and my client forwarded these estimates to Auto-Owners. After providing the estimates, my client received an email from Shawn Alexander along with an estimate of George Beeler. Mr. Alexander subsequently forwarded two checks to my client, one for the sum of $9,456.84 and the other for the sum of $18,246.24. It is unclear how Auto-Owners arrived at these sums. Needless to say, these sums do not come anywhere close to the costs necessary for the restoration phase for my client's home and for Auto-Owners to comply with its representation that this restoration would be covered up to the sum of $499,500.00 as set forth in the homeowners policy declarations. Furthermore, Auto-Owners has not responded to my client's communications relating to Auto-Owner's failure to pay the sum that is owed for the restoration.

Demand is hereby made that Auto-Owners comply with the homeowners policy, policy declarations and representations made to my client, and that Auto-Owners pay my client the costs set forth in the estimates previously provided to Auto-Owners by my client. Any failure by Auto-Owners to make this payment would constitute bad faith and would subject Auto-Owners to additional liability as set forth at Tenn. Code Ann. § 56-7-105.

Please be advised that my client is facing serious health issues. At the present time, he is required to live in his home that has been basically gutted and that is in need of being restored. Therefore, it is imperative that Auto-Owners provide, as soon as possible, the funds required for the restoration to be completed.

Please be advised that this letter is not a waiver of any claims or defenses that my client may have. All claims and defenses are reserved.

                                          Sincerely,

                                          Reggie E. Keaton
                                          FRANTZ, McCONNELL & SEYMOUR, LLP

REK:vkc

S:\WDOX\CLIENTS\7804\000036\CORRESPO\02762354.DOCX



**Auto-Owners**
INSURANCE
LIFE · HOME · CAR · BUSINESS

Knoxville Claims Branch
PO Box 32609 | Knoxville TN 37930-2609
2035 Lakeside Centre Way Suite 210 | Knoxville TN 37922
p. 888.685.9617 | f. 865.539.9528 | auto-owners.com
Knoxville clm@aoins.com

June 18, 2024

Reggie E. Keaton
Frantz, McConnell & Seymour
650 W Main Street, Suite 500
Knoxville, TN 37902

RE:    Claim No:    300-0614356-2022 and 300-0672038-2022
        Insured:      John White
        Your Client:  John White
        Date of Loss: 10/26/2014

Dear Mr. Keaton,

This will acknowledge you are representing John White for his two homeowners claims (300-0614356-2022 for October 5, 2022 and 300-0672038-2022 for August 15, 2022). These are two separate claims for two separate events for damages caused to Mr. White's dwelling.

These two events that occurred under two separate policy terms. As such, the mold policy limit is not the same for each claim (declarations pages for each claim are enclosed for review which show the different limits for mold coverage) and actual cash value payments has been issued under each claim to Mr. White. The payments break down as follows:

Claim 300-0614356-2022 is a claim for basement water condensation from the HVAC system which resulted in microbial growth and not from direct physical contact with water. The policy term is 09/04/2022 to 09/04/2023 with a mold policy limit of $49,500 and a COV A Dwelling policy limit of $499,500. As there was not an event of direct water physical contact with basement. As such, COV A Dwelling would not be triggered to provide coverage.

The mold coverage was triggered for the mitigation and repair of the microbial growth that occurred as a result of the basement condensation from the HVAC system. The policy limit has been paid for the mold coverage in payments to ServPro for $25,369.19 for mitigation services, $15,123.97 to Mornington Properties for additional mitigation services, and an actual cash value payment of $9,456.84 to Mr. White to reach the mold policy limit.

Claim 300-0672038-2022 is a claim for a failed nail in the roof flashing which caused a long-term leak to the dining room, den, garage, bedroom 1, bedroom 1 closet, bedroom 2, bedroom 2 closet and hall bathroom. As a result of the long-term leak, mold and rot had developed and damaged the insured's dwelling. As damage caused by direct physical water contact can be covered under COV A Dwelling, items that did not have direct physical contact with water paid under the mold coverage. The policy term is 09/24/2021 to 09/04/2022.

The mold policy limit for this claim is $42,750. The policy limit has been paid for the mold coverage in payments to ServPro for $25,369.19 for mitigation services, $15,123.98 to

**EXHIBIT 2**

Mornington Properties for additional mitigation services and an actual cash value payment for repairs of $2,256.83 to Mr. White to reach the policy limit.

George Beeler completed an estimate for the repair. The COV A Dwelling estimate was written for the items that were directly damaged by physical water contact. COV A Dwelling damage was estimated to have replacement cost of $21,380.82 with $5,391.41 in recoverable deprecation. An actual cash value payment of $15,989.41 was issued to Mr. White. Once the repairs have been completed, Mr. White can submit proof of the completed repairs and a payment of $5,391.41 for the recoverable deprecation will be issued to him.

Enclosed for your review are copies of George Beeler's estimate for repairs, ServPro mitigation invoices and documentation, Mornington Properties invoices and documentation and declarations pages for each policy term each claim applied.

Should you have any questions, please contact me to discuss.

Sincerely,
***Auto-Owners Insurance Company***

Shawn Alexander
Field Claims Representative II
knoxville.clm@aoins.com
Ext. 58487

SA

Enclosures